UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| DARRELL MORRIS | : | CIVIL NO. 3:05 CV 00848 (JBA) |
| Plaintiff | : | |
| | : | |
| VS. | : | |
| | : | |
| YALE UNIVERSITY | : | |
| SCHOOL OF MEDICINE | : | |
| Defendant | : | AUGUST 5, 2005 |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

Pursuant to Fed. R. Civ. P.12(b)(1), the defendant, Yale University School of Medicine ("Yale"), has moved to dismiss Counts Two through Five for lack of jurisdiction.  In the alternative, pursuant to Fed. R. Civ. P.12(b)(6), Yale has moved to dismiss those counts for failure to state a claim upon which relief can be granted.  This memorandum is submitted in support of that motion.

STATEMENT OF FACTS

The plaintiff, Darrell Morris ("Morris"), was a student at the defendant Yale University School of Medicine and was dismissed on June 30, 2004.  In Count One, which contains the plaintiff's only federal cause of action, the plaintiff alleges that Yale's actions violated rights secured to him by the Civil Rights Act of 1866, 42 U.S.C. § 1981.

Counts Two through Five purport to allege state law causes of action.  Count Two alleges that a contract had been established between the two parties on the basis of the student handbook, and that Yale breached this contract.  Count Three alleges negligent misrepresentation in that Yale failed to exercise reasonable care in informing the plaintiff that he could take a particular examination three times.  Count Four alleges that a covenant of good faith and fair dealing existed between the parties, and that Yale breached this covenant.  Finally, Count Five alleges promissory estoppel in that the plaintiff relied to his detriment on promises made by Yale.

While the complaint suggests that the sole reason for the dismissal of the plaintiff was his failure to pass the United States Medical Licensing Examination ("USMLE"), the facts are otherwise.  Plaintiff matriculated at the Medical School in August, 2000.  He was notified that he failed the Molecules to Systems course at the end of his first semester, in February, 2001. Under the procedure at the Medical School it is then the student's responsibility to speak with his professor[1] of the failure and make a plan for remediation within thirty days following notice of the failure.  Plaintiff failed to follow this procedure and did not contact the professor with respect to his having failed the course within the required time period.  Thereafter the Dean of Students contacted the

---

[1] The identity of the individual taking an examination is shielded from the professor, so that a professor will not know which student has failed a course.

plaintiff and arranged for the plaintiff to remediate his failure.  Ultimately, he did pass the course.  During his second semester of his first year, plaintiff required a tutor in a basic science course.  The tutor's evaluation was that the plaintiff had a short attention span and did not spend enough time reading the course materials to master the subject matter.  By the summer of 2001, there were complaints from one of plaintiff's professors that he was not attending his tutorials, an essential component of one's medical education.  Plaintiff was then provided with a tutor, to work with him over the summer.

On August 17, 2002 plaintiff failed the USMLE for the first time.  In the fall of 2002, the Department of Internal Medicine recommended that the plaintiff be failed in his Medicine I  rotation; however, the Dean of Students intervened and plaintiff was given a conditional pass.  Plaintiff was counseled, and he acknowledged that his performance had not been up to standards.  Plaintiff also received an unsatisfactory recommendation from his internal medicine rotation, with the instructor indicating that the plaintiff was not ready for his third year in medical school.

In light of plaintiff's difficulty in mastering the basic courses during his first two years of medical school, the Medical School placed Morris on probation on June 9, 2003.  Normally, a student at that point in his or her medical education would commence clinical rotations, in which patients would be treated by the student under the supervision of

licensed doctors.  Understandably, the Medical School wishes to have its students demonstrate competence in basic medicine prior to the commencement of such rotations.  Accordingly, the Medical School's Progress Committee determined the plaintiff would be required to pass the USMLE no later than July 31, 2003, in order to demonstrate his competence to participate in the clinical rotations.  Plaintiff took the examination a second time, and failed again.

Thereafter, on October 27, 2003 the Medical School's Progress Committee unanimously voted to dismiss plaintiff from the Medical School.  Plaintiff then appealed this decision to the Acting Dean, claiming that he had not been informed that would be dismissed if he failed to pass the USMLE on his next attempt.  During the course of the grievance process, the plaintiff acknowledged that he had not performed well during his first two years at the Medical School.  The Grievance Committee recommended to the Acting Dean that the plaintiff be reinstated with conditions attached, including a requirement that he complete the USMLE by June 15, 2004.

On March 3, 2004 plaintiff was notified in writing that he must take and pass the USMLE by June 15, 2004 or he would be dismissed.  Plaintiff then asked for additional time within which to take the test, stating that he was enrolled in a review course, which would not conclude by June 15.  This request was granted and plaintiff was informed in

writing on March 5, 2004 by the Acting Dean that he must take and pass the USMLE no later than June 30, 2004, and that his failure to do so would result in dismissal. Thereafter, the Director of the University of Missouri-Kansas City Institute for Professional Preparation informed the Medical School that the plaintiff had enrolled in a four week USMLE preparation course, but abandoned the course after one and a half weeks. Further, it was reported that plaintiff's attendance was poor during the week and a half he remained in the course.  Plaintiff e-mailed the Dean of Students on June 30, 2004 indicating that although he recognized he had a time limit to take the exam no later than June 30, he did not in fact register for the exam.  In that e-mail he promised that he would take the exam no later than July 14.  On July 26, 2004 the Dean of Students learned that plaintiff had still not taken the examination, and he had not even registered to take it.  By letter dated August 2, 2004, plaintiff was dismissed from the Medical School because of his failure to comply with the requirements of the Acting Dean when he was reinstated.

It is thus apparent that the reason for the plaintiff's dismissal was not simply his twice having failed the USMLE; rather, it was a pattern of failure and lack of effort,

culminating in the plaintiff's refusal to take the exam by the agreed-upon date.[2]

LEGAL STANDARD

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  See also United Mine Workers v. Gibbs, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966).  "Thus, under § 1367, state law claims are part of the same constitutional case if 'they derive from a common nucleus of operative fact,' and 'are such that [the plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'"  James v. Sun Glass Hut of California, Inc., 799 F. Supp. 1083, 1084 (D.Colo. 1992), citing Gibbs, 383 U.S. at 725.[3]  Subsection (c) of 28 U.S.C. § 1367 provides, however, that the

---

[2] Defendant recognizes that normally a recitation of the facts is not helpful when considering a Motion to Dismiss.  However, in the present case, it may be helpful for the Court to understand the type of evidence which may be offered when evaluating whether to exercise its pendent jurisdiction over the state law claims.  To put it another way, this summary of relevant facts has been included not to suggest that the Court should conclude that these facts are accurate but rather to alert the Court that evidence concerning such facts would be offered by the defendant in connection with the state law claims.  As discussed below, Connecticut law forbids courts from intervening in decision making with regard to academic programs except in the most narrow of circumstances.  Accordingly, the fact that evidence concerning these facts will be offered - whether the fact finder ends up crediting those facts or not - is relevant to the Court's decision in deciding to exercise pendent jurisdiction.

[3]      "Because it is a codification of the old pendent jurisdiction doctrine, courts applying § 1367 have continued to rely on United Mine Workers v. Gibbs, 383 U.S. 715, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) . . . ."  James v. Sun Glass Hut of California, Inc., 799 F. Supp. at 1084.

"district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if (1) the claim raises a novel or complex issue of state law, [or] (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction."  The decision whether to exercise supplemental jurisdiction is within the court's discretion.  Gibbs, 383 U.S. at 726.  See also Purgess v. Sharrock, 33 F.3d 134, 138 (2d Cir. 1994).

"Although the doctrine of pendent jurisdiction is one of flexibility and discretion, it is fundamental that [n]eedless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law."  (Internal quotation marks omitted.)  Young v. New York City Transit Authority, 903 F.2d 146, 163-164 (2d Cir.), cert. denied, 498 U.S. 984, 111 S. Ct. 516, 112 L. Ed. 2d 528 (1990).  See also Seabrook v. Jacobson, 153 F.3d 70, 72 (2d Cir. 1998).  "A district court ought not reach out for . . . issues, thereby depriving state courts of opportunities to develop and apply state law."  Young, supra,  903 F.2d at 164.

With regard to 28 U.S.C. § 1367 (c)(2), the district court should consider whether state law issues substantially predominate in terms of proof, scope of issues raised, or the comprehensiveness of the remedy sought.  Carnegie-Mellon University v. Cohill, 484

U.S. 343, 350 n. 7, 108 S. Ct 614, 98 L. Ed. 2d 720 (1988).  If, after consideration of

these factors, it is determined that the case properly belongs in state court, the federal

court should decline to exercise jurisdiction by dismissing the case without prejudice.

Gibbs, 383 U.S. at 726-27.   Counts Two through Five should be dismissed because they

do not arise from the same nucleus of operative fact as the sole federal cause of action

because the state law issues would substantially predominate over the federal cause of

action, and because they raise novel issues of state law.  Alternatively, these counts

should be dismissed for failure to state a claim under state law.

ARGUMENT

A.      PURSUANT TO 28 U.S.C. § 1367, THE COURT LACKS SUBJECT MATTER
        JURISDICTION OVER COUNTS TWO, THREE, FOUR AND FIVE OF THE
        PLAINTIFF'S COMPLAINT.

        1.      Plaintiff's state law causes of action do not derive from a nucleus of
                operative facts common to that of the lone federal claim.

        Plaintiff's state law claims should be dismissed for lack of subject matter

jurisdiction because they are not so related to the lone federal claim as to form part of the

same case or controversy.  In deciding this issue, the federal courts generally consider

"whether the claims arise from the same facts, or involve similar occurrences, witnesses

or evidence."  Hudson v. Delta Air Lines, Inc., 90 F.3d 451, 455 (11th Cir. 1996).  See

also Smylis v. City of New York, 983 F. Supp. 478, 484 (S.D.N.Y. 1997).  One example

is <u>Cormier v. Funtown/Splashtown USA, Inc.</u>, 294 F. Supp. 2d 125, 128 (D.Maine 2003), in which the plaintiff employee brought suit against her employer alleging discrimination in violation of 42 U.S.C. § 2000e and state law claims of breach of fiduciary duty, intentional misrepresentation, breach of contract and violation of a state statute.  The defendants filed a counterclaim asserting state law claims of breach of fiduciary duty, violation of confidential relations, conversion, libel and slander, and failure to pay debts. <u>Id.</u>  The plaintiff sought dismissal of the state law claims contained in her own complaint and all the counts of the counterclaim on the ground that those claims did not arise out of a nucleus of operative fact common to that of the federal discrimination claim.  <u>Id.</u> at 129. In finding that it did not have jurisdiction over the state law claims, the court reasoned that those claims "rely significantly on facts not involved in determination of the discrimination claim.  From all that appears, the witnesses may essentially be different on the state and federal claims as well."  <u>Id.</u> at 130.

Similarly, in <u>Burgess v. Omar</u>, 345 F. Supp. 2d 369, 370 (S.D.N.Y. 2004), the court dismissed state law claims alleging *inter alia*, breach of fiduciary duty, misappropriation and waste, stating: "[W]hile there may be some facts that are common to both the [state and federal claims], complaint and these counterclaims do not arise out of a common nucleus of operative fact.  Put another way, while facts relevant to one

claim might provide background with respect to the other, more is required."  Id. at 371-72.  See also Semi-Tech Litigation, LLC v. Bankers Trust Co., 234 F. Supp. 2d 297, 300 (S.D.N.Y. 2002) (motion to dismiss granted where resolution of state law claims involved issues "irrelevant" to lone federal claim); Learnard v. Inhabitants of Town of Van Buren, 182 F. Supp. 2d 115, 127 (D.Me. 2002) (plaintiff's allegations of violation of the Maine Civil Rights Act, civil conspiracy, defamation, intentional infliction of emotional distress, and invasion of privacy "all rely at least partially on facts other than" those relevant to federal due process claim); Singh v. George Washington University, 368 F. Supp. 2d 58, 72 (D.D.C. 2005) (counterclaim alleging defamation dismissed where it had "almost no factual or legal overlap" with plaintiff's discrimination claim under the Americans with Disabilities Act).

In the present case, the plaintiff's state law claims rely on facts that are not relevant to his § 1981 claim.  Therefore, the federal and state claims do not arise out of a common nucleus of operative fact.  In order to establish his claim under § 1981, the plaintiff will have to prove that the defendant discriminated against him on the basis of his race, and that this discrimination concerned the right to make and enforce contracts. See Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). These elements are not part of any of plaintiff's state law claims.  The claims for breach

of contract, negligent misrepresentation, breach of the covenant of good faith and fair dealing, and promissory estoppel all require proof of a promise or agreement between the parties, breach of that promise or agreement by the defendant, and damages.  The focus of the § 1981 claim will be on the defendant's treatment of the plaintiff as it compares to other similarly situated caucasian students, while the focus of the state claims will be on whether the provisions of the student handbook constitutes a contract, whether there was a breach of contract, and whether such a breach is congnizable under state law in light of the deference the courts must give to educational decisions.  While there will undoubtedly be some common facts because both the federal claim and the state claims involve plaintiff's dismissal from school, the issue of whether the defendant breached an express or implied contract offers no insight into whether the defendant discriminated against the plaintiff.  See <u>Singh v. George Washington University</u>, 368 F. Supp. 2d at 72.  Therefore, pursuant to 28 U.S.C. § 1367(a), Counts Two, Three, Four, and Five of plaintiff's complaint should be dismissed for lack of subject matter jurisdiction.

     2.    <u>Plaintiff's state law causes of action will substantially predominate over the lone federal cause of action and present novel issues of state law</u>.

Even if the Court had supplemental jurisdiction over the plaintiff's state law causes of action, the Court should nonetheless decline to exercise this jurisdiction because the state law claims will substantially predominate over the lone federal claim.  28 U.S.C.

§ 1367(c)(2).  Furthermore, these causes of action present novel issues of state law that are more properly decided by a state court.  Courts often decline to exercise supplemental jurisdiction when the state claims require different or foreign elements of proof, or would expand the action beyond that relevant to the federal claim.  One example is James, supra, 799 F.Supp. at 1083.  In James, the plaintiff brought a seven count complaint against her former employer alleging a violation of the Federal Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, and six state law causes  of action.  Several of the state law claims are identical to those in the present case in that the plaintiff alleged a breach of contract, negligent misrepresentation, and promissory estoppel.  Id. at 1085.  The court granted the defendant's motion to dismiss the six state law claims, finding that they would substantially predominate over the lone federal claim.  Id. at 1084.  The court stated that "[p]laintiff's contract and fraud claims require elements of proof that are distinct and foreign to her ADEA claim.  These claims would substantially expand the scope of this case.  Moreover, all the state law claims involve damages not available under ADEA, again causing substantial expansion of this action beyond that necessary and relevant to the federal claim."  Id. at 1085.   The very same analysis applies to the case at bar.

Similarly, in Brokke v. Stauffer Chemical Co., 703 F. Supp. 215, 218 (D.Conn. 1998), the plaintiff brought suit against a former employer alleging a violation of the ADEA and ERISA, as well as seven state law counts that "implicate a broad array of common-law fraud and contract principles, from implied covenants of good faith and fair dealing to promissory estoppel and fraudulent misrepresentation."  In finding that the state law claims would substantially predominate over the federal claims, Judge Eginton stated that "[b]ecause of the sheer number of state law claims asserted, the plaintiff would be required to present a greater quantum of proof in order to establish a basis for recovery on those claims than would be necessary under ADEA and ERISA."  Id.  He also reasoned that the scope of the issues raised by the state law claims was more expansive that that encompassed by the federal claims.  Id.  See also Forsythe v. Microtouch Systems, 945 F. Supp. 350, 358-59 (D.Mass. 1996) (court declined to exercise supplemental jurisdiction over counts based on state statutes, common law breach of contract and breach of covenant of good faith and fair dealing in action where federal jurisdiction was based on Title VII claims); Kennedy v. Mountain States Telephone & Telegraph Co., 449 F. Supp. 1008 (D.Colo. 1978) (breach of contract claim dismissed in cause of action brought under ADEA because of "inevitable complications in matters of proof and concomitant clouding of issues"); Gliatta v. Stein, 2004 WL 1171714, *3

(W.D.N.Y. 2004) (in suit where federal jurisdiction was based on 42 U.S.C. § 1983, court declined to exercise jurisdiction over state law claims of strict products liability, negligence and lack of informed consent because they would be more complex and would require greater amount of proof).  The rationale behind all of these cases applies with equal force to the case at bar.

In finding that state law claims substantially predominate, courts have relied on factors other than the type and scope of proof involved.  In <u>Nicol v. Imagematrix, Inc.</u>, 767 F. Supp. 744 (E.D.Va. 1991), an action involving a sex discrimination claim under Title VII, the defendants moved to dismiss seven state law counts.  In addition to finding that the state law claims would require proof of facts unrelated to and exceeding the scope of the federal discrimination claim, the court also stated that the "state claims bear little or no relationship to federal anti-discrimination policy."  <u>Id.</u> at 750.   In <u>Bodenner v. Graves</u>, 828 F. Supp. 516 (W.D. Michigan 1993), the plaintiffs brought a twenty-nine count complaint, twenty-eight of which sounded in state law.  The court, in dismissing the entire complaint, found that because of the sheer number of state law counts, there was an "overwhelming predominance of state law issues."  (Internal quotation marks omitted.) <u>Id.</u> at 519.  The same considerations dictate dismissal of the state law claims in the present action.

The factors relied upon in the cases discussed above all exist in the present case. In James, supra, 799 F. Supp. at 1083, the plaintiff claimed that her termination from employment constituted unlawful discrimination under federal law, as well as a breach of express and implied agreements.  In the present case, the plaintiff alleges that his dismissal from the Medical School constitutes unlawful discrimination pursuant to 42 U.S.C. § 1981.  He also makes the unrelated state law allegations concerning express and implied contracts based on the student handbook.  As in James, the state law causes of action in the present case would require elements of proof that are distinct and foreign to the discrimination claim, and, as a result, would substantially predominate over that claim.  Whether the student handbook constitutes an express or implied agreement is a different issue entirely from whether the plaintiff has been discriminated against and would require different elements of proof.  As stated with regard to the discussion of 28 U.S.C. § 1367, the present plaintiff's lone federal claim will require proof of whether he was treated differently from similarly situated caucasian students.  The plaintiff's state law claims, by contrast, will require proof of whether an express or implied agreement had been entered into between the parties on the basis of the student handbook, whether any such agreement was breached, whether plaintiff suffered actionable damages, and whether any such cause of action is permitted under Connecticut Law.  These matters of

proof are different from the issue of whether the plaintiff was discriminated against and will unnecessarily expand the scope of proof required for trial.

By requiring the Court to become embroiled in the additional issues of breach of contract, negligent misrepresentation, breach of the covenant of good faith and fair dealing, and promissory estoppel, the state law claims will substantially predominate over the single federal claim.  Determination of these state law claims will not act to further any federal anti-discrimination goals and will in fact cause this Court to expend judicial resources on what are purely state law issues.  "[T]he limited jurisdiction of the federal courts should not be squandered."  Nicol, supra, 767 F. Supp. at 745.  Also, because Counts Two through Five involve purely state law issues, they are more properly decided by a state court.  In the present case, "permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog."  (Internal quotation marks omitted.)  Luongo v. Nationwide Mutual Insurance Co., 1996 WL 445365, *5 (S.D.N.Y. 1996).  Because the state law claims would substantially predominate over the lone federal claim, the Court should decline to exercise its jurisdiction over Counts Two, Three, Four and Five.  The Court should also decline to exercise its supplemental jurisdiction because the state law causes of action present novel issues in a developing area of state law.  28 U.S.C. § 1367(c)(1).

In <u>Kelsey v. Sheraton Corporation</u>, 662 F. Supp. 10 (D.Conn. 1986), an employee brought a Title VII action against her employer, as well as state law claims of intentional infliction of emotional distress, wrongful discharge, and "outrageous discharge."  In declining to exercise jurisdiction over the state law claims, Judge Blumenfeld reasoned that, "rather than rushing in to decide claims based on novel theories of state law, a federal court is often well-advised to separate the federal claims from the state claims and to dismiss the latter, leaving their resolution to the more appropriate forum of a state court."  <u>Id.</u> at 12.  As to the intentional infliction of emotional distress cause of action, the <u>Kelsey</u> court declined jurisdiction because the availability of such a claim in the employment context had been the subject of dispute in the Connecticut state courts.  <u>Id.</u> at 13.  The <u>Kelsey</u> court declined jurisdiction over the count alleging "outrageous discharge" because there was not any Connecticut authority recognizing such a claim.  Id. Finally, because the law in Connecticut regarding wrongful discharge was still in a state of development, Judge Blumenfend held that it was best addressed by the state courts.  <u>Id.</u> at 14.  "These issues of the rights of at-will employees are of wide-ranging significance and the state has a substantial interest in deciding these questions."  <u>Id.</u>   The same can be said for lawsuits challenging educational decisions.

In <u>Sullivan v. Stein</u>, 2004 WL 1179351, *21 (D.Conn. 2004), Judge Kravitz declined to exercise supplemental jurisdiction over state law causes of action because the case had only been pending for a short time and because the claims at issue were "purely state law claims befitting the expertise and experience of a state court."  In <u>Lopez v. Smiley</u>, ___ F. Supp. 2d ___ (D.Conn. 2005) (2005 WL 1513855), Judge Kravitz again declined to exercise the court's supplemental jurisdiction where the plaintiff wanted the "federal court to recognize an entire suite of novel Connecticut constitutional tort causes of action . . . ."  <u>See</u> also <u>Lajoie v. Connecticut State Board of Labor Relations</u>, 871 F. Supp. 550, 554 (D.Conn. 1994) (court declined to exercise jurisdiction over state law claims involving important questions concerning the policy of the state's attorney general where there was no state precedent or direction).

The present case also involves a developing area of the law that is best addressed by the Connecticut state courts.  The issue of when a student may bring an action against an educational institution for breach of an implied or express contract has only been addressed by the Connecticut Supreme Court on one occasion.  <u>See</u> <u>Gupta v. New Britain General Hospital</u>, 239 Conn. 574, 590-94, 687 A.2d 111 (1996).  The Connecticut Supreme Court expressed reluctance to interfere in such matters.  Judge Blumenfeld recognized this dilemma, holding that the applicability to the case before him

of two then recent Connecticut cases on the law of wrongful discharge was "particularly

unclear."  Kelsey, supra, 662 F. Supp at 14.  "For this court to decide such a novel and

significant, but as yet unresolved, issue of state law would amount to no more than a mere

prediction of subsequent state law developments – a tentative answer which may be

displaced tomorrow by a state court adjudication."  (Internal quotation marks omitted.)

Lajoie, supra, 871 F. Supp. at 554.  Because Counts Two, Three, Four and Five involve

novel issues of state law, this Court should decline to exercise its jurisdiction over those

claims.

B.      COUNTS TWO, THREE, FOUR AND FIVE OF THE PLAINTIFF'S
        COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE A
        CLAIM UPON WHICH RELIEF CAN BE GRANTED.

        Even if jurisdiction were to be exercised over Counts Two, Three, Four and Five

of the  complaint, those counts should nonetheless be dismissed for failure to state a claim

upon which relief can be granted.  Connecticut permits a student to challenge his

dismissal from an educational program only in very limited circumstances. Gupta v. New

Britain General Hospital, 239 Conn. 574, 592-93, 687 A.2d 111 (1996); Faigel v.

Fairfield University, 75 Conn. App. 37, 38, 815 A.2d 140 (2003).  Indeed, there are only

"two situations wherein courts will entertain a cause of action for institutional breach of

contract for educational services.  The first would be exemplified by a showing that the

educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field. . . . The second would arise if the educational institution failed to fulfill a specific contractual promise distinct from any overall obligation to offer a reasonable program."  Gupta, supra, 239 Conn. at 592-93 (citations omitted.) As to the second category, the court in Faigel stated that the student must "allege nonperformance of a special promise, a promise outside the purview of normal educational expectations."  75 Conn. App. at 38.  The purpose of these requirements is to "limit judicial intrusion into educational decision making . . . ."  Id. Otherwise, the judiciary would be involved "in the awkward tasks of defining what constitutes a reasonable educational program and of deciding whether that standard has been breached."  Gupta, supra, 239 Conn. at 591.

In Count Two of his complaint, the plaintiff alleges that a contract existed between the parties.  Plaintiff claims that Yale breached this contract by not allowing him to fail the licensing exam three times prior to his dismissal.  The allegations contained in this count do not fall within either of the exceptions set forth in Gupta, supra, 239 Conn. at 592-93.  The first exception is clearly not applicable because the plaintiff is not alleging that the educational program offered to him was inadequate.  As discussed more fully below, the second exception is also not applicable because plaintiff has not alleged a

breach of a promise that is distinct from any overall obligation to offer a reasonable

program.  Because plaintiff's allegations do not fit within either of the Faigel/Gupta

exceptions, he has failed to state a claim upon which relief can be granted and Count Two

should be dismissed.

      In recognizing the second exception, the Gupta court relied on two cases: Cencor,

Inc. v. Tolman, 868 P.2d 396, 399 (Colo. 1994) (en banc), and Paladino v. Adelphi

University, 89 App. Div. 2d 85, 92, 454 N.Y.S.2d 868 (1982).  In Paladino, parents sued

their son's elementary school in contract for failure to provide a quality education.  The

court held that recovery for breach of contract was not available in the situation before it,

but might be viable if "the contract with the school were to provide for certain specified

services, such as for example, a designated number of hours of instruction, and the school

failed to meet its obligation . . . ."  Id.  In Cencor, 868 P.2d at 399, the court held that

"when students allege that educational institutions have failed to provide specifically

promised educational services, such as failure to offer any classes or a failure to deliver a

promised number of hours of instruction, such claims have been upheld on the basis of

the law of contracts."  The plaintiffs in Cencor made various allegations regarding the

defendant school's failure to provide up-to-date equipment, supervised training and

computer training.  The court held that the plaintiffs properly alleged a breach of contract

action to "the extent these obligations constitute educational services for which the respondents allegedly paid and which the respondents failed to provide . . . ." Id. at 399-400.

Cencor and Paladino hold that a breach of contract action may be maintained where a school has failed to provide a specifically promised educational *service*, such as hours of instruction or particular classes.  See Cencor, 868 P.2d at 399.  This is because the promised service is part of the bargained-for exchange between the school and the student and encompasses at least part of what the student has agreed to pay for.  See Cencor, 868 P.2d at 400.  Unlike Cencor and Paladino, the present complaint does not allege the failure to provide an educational service.  Rather, it alleges that the plaintiff was not given enough opportunities to fail a licensing exam.  Determining whether it was proper to dismiss a student would require the Court to become involved in educational decision making, a practice that is specifically forbidden by the Connecticut Supreme Court.  See Gupta, supra, 239 Conn. at 591.  In addressing whether the plaintiff's dismissal from the defendant hospital's residency program was arbitrary, capricious or in bad faith, the Gupta court recognized that decisions regarding dismissal are educational--not judicial--decisions, stating: "Like the decision of an individual professor as to the proper grade for a student in his course, the determination whether to dismiss a student

for academic reasons requires an expert evaluation of cumulative information and is not readily adapted to the procedural tools of judicial or administrative decision making." Gupta, supra, 239 Conn. at 594.

Courts in other jurisdictions have similarly concluded that it is inappropriate to allow courts and juries to second guess educational decisions.  "Implicit in a university's general contract with its students is a right to change the academic degree requirements, provided that such changes are not arbitrary and capricious."  (Internal quotation marks omitted.)  Chira v. Columbia University, 289 F. Supp. 2d 477, 486 (S.D.N.Y. 2003), citing, Babiker v. Ross University School of Medicine, 2000 WL 666342, at *6 (S.D.N.Y. 2000).  "[A] binding absolute unchangeable contract is inappropriate in the academic setting in view of the wide latitude and discretion afforded by the courts to educational institutions."  (Internal quotation marks omitted.)  Soderbloom v. Yale University, 5 Conn. L. Rptr. 513 (Conn.Super. February 3, 1992).  Accordingly, even if it were true that the defendant ever had a policy that the only ground for dismissal was failing the USMLE three times and that plaintiff was terminated due to such failure, such a policy would not create an enforceable contract.

As noted in the Statement of Facts, supra, the present plaintiff was not dismissed simply because of his having failed the USMLE twice.  His dismissal was the culmination

of a series of evaluations, in which the plaintiff's performance and effort were found lacking.  It is precisely this type of circumstance which led the <u>Gupta</u> court to "limit judicial intrusion into educational decision making."  <u>Faigel v Fairfield University</u>, 75 Conn. App. 37, 38 (2003).  Accordingly, even if this court were to assume jurisdiction over Count Two, that count should be dismissed for failure to state a claim.

The very same policy considerations require that Counts Three through Five be dismissed for failure to state a claim.  Those counts, alleging negligent misrepresentation, breach of the covenant of good faith and fair dealing, and promissory estoppel are all premised on the claim that there existed a contract that the plaintiff would not be dismissed from the medical school, so long as he passed the USMLE by this third attempt.  The very same considerations which led the <u>Gupta</u> and <u>Faigel</u> courts to dismiss those causes of action require dismissal of these claims.  In fact, the <u>Gupta</u> court recognized this similarity, stating that "[t]he jurisprudential considerations that shed doubt on the viability of the tort of educational malpractice also inform our analysis of a contract claim based on inadequate educational services." <u>Gupta</u>, <u>supra</u>, 239 Conn. at 591. In other words, whether the cause of action sounds in tort or contract, the Connecticut courts will not permit educational decisions to be reviewed in court except in the two

limited situations contemplated by <u>Gupta</u>.  Since the present complaint does not include either exception, Counts Two through Five of the complaint should be dismissed.

<u>CONCLUSION</u>

Counts Two, Three, Four and Five of the Plaintiff's complaint should be dismissed for lack of subject matter jurisdiction.  In the alternative, Counts Two, Three, Four and Five should be dismissed for failure to state a claim upon which relief can be granted.

THE DEFENDANT
YALE UNIVERSITY SCHOOL OF
MEDICINE

By /s/_____
  Patrick M. Noonan (ct00189)
  Donahue, Durham & Noonan, P.C.
  741 Boston Post Road
  Guilford, CT 06437
  (203) 458-9168

## **CERTIFICATION**

This is to certify that a copy of the foregoing was mailed, postage prepaid, on the

above-written date, to:

Dawne Westbrook, Esquire
PO Box 2502
Middletown, CT 06457

/s/_____
Patrick M. Noonan