```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT

Darrell Morris,              :
     Plaintiff,              :
                             :
v.                           :    Case No. 05cv848 (JBA)
                             :
Yale University School       :
of Medicine,                 :
     Defendant.              :
```

**RULING ON DEFENDANT'S MOTION TO DISMISS [DOC. # 20]**

Plaintiff, an African American male and former medical student at the Yale University School of Medicine ("Yale" or "the School"), brings this action against Yale in connection with his dismissal from the School, asserting a claim under the Civil Rights Act of 1866, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981 (Count I), and common law claims for breach of contract, negligent misrepresentation, breach of the covenant of good faith and fair dealing, and promissory estoppel (Counts II-V).  See Amended Complaint [Doc. # 19].  Defendant moves to dismiss Counts II-V pursuant to Fed. R. Civ. P. 12(b)(1) and 28 U.S.C. § 1367 for lack of jurisdiction, and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state claims upon which relief can be granted, arguing that "Connecticut permits a student to challenge his dismissal from an educational program only in very limited circumstances."  See Def. Motion [Doc. # 20]; Def. Mem. [Doc. # 21] at 19.  For the reasons that follow, defendant's Motion will be denied.

1

**I.   FACTUAL BACKGROUND**

The Court accepts as true the following facts as alleged in plaintiff's Amended Complaint [Doc. # 19].  Plaintiff is an African American male who matriculated at the School as a medical student in 2000.  At the time of plaintiff's matriculation, the School maintained a student handbook containing policies, procedures and requirements, including that all students take and pass Step 1 of the United States Medical Licensing Examination ("USMLE") administered by the National Board of Medical Examiners ("NBME").  The student handbook provided that students are allowed three opportunities to pass the examination, and that they are expected to pass all phases of the USMLE within six years.

By 2003, plaintiff had successfully completed and passed the basic science courses required by the School, but in October 2003, after two unsuccessful attempts at passing Step 1 of the USMLE, the School informed plaintiff that he was being dismissed.  Plaintiff appealed this decision, on the basis that the Dean of Student Affairs had not informed him that failure on his second attempt would result in dismissal, and prevailed.  The plaintiff subsequently enrolled in two review courses to prepare for taking the examination a third time, and set a testing date with the NBME of June 30, 2004.  Thereafter, plaintiff requested a 30 day extension.  After learning that plaintiff did not take the

examination on June 30, 2004, the School dismissed plaintiff for the second time.

In March 2005, the plaintiff took and passed Step 1 of the USMLE on his third attempt. Upon receiving his results, plaintiff notified the School in hopes that he could return, given that he had passed the examination within three attempts in accordance with the requirement in the student handbook; the School maintained plaintiff's dismissal. Plaintiff alleges that other similarly situated Caucasian students have been permitted to take the examination three times before dismissal and have not been dismissed for requesting extensions of time to take the examination.[1]

## II. RULE 12(B)(1)

Pursuant to 28 U.S.C. § 1367(a), a district court may in certain circumstances exercise supplemental jurisdiction over a party or claim, even where the court otherwise lacks original

---

[1] In its memorandum in support of its Motion to Dismiss, defendant offers its own version of the relevant circumstances and events surrounding plaintiff's dismissal from the School, acknowledging that plaintiff's allegations are taken as true upon a motion to dismiss, but noting "it may be helpful for the Court to understand the type of evidence which may be offered when evaluating whether to exercise its pendent jurisdiction over the state law claims." Def. Mem. at 6 n.2. Specifically, defendant alleges that plaintiff performed poorly in his classes, was put on probation, and was given specific conditions as to when he was required to take the USMLE. Defendant contends that "the reason for the plaintiff's dismissal was not simply his twice having failed the USMLE; rather, it was a pattern of failure and lack of effort, culminating in the plaintiff's refusal to take the exam by the agreed-upon date." Id. at 5-6.

federal jurisdiction over that party or claim.  Section 1367(a) states, in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).  As the Second Circuit has observed, supplemental jurisdiction has its origins in the doctrine of pendent jurisdiction, discussed by the United States Supreme Court in United Mine Workers v. Gibbs, 383 U.S. 715, 725-29 (1966), and provides that a district court has jurisdiction "'over an entire action, including state-law claims, whenever the federal-law claims and state-law claims in the case derive from a common nucleus of operative fact and are such that [a plaintiff] would ordinarily be expected to try them all in one judicial proceeding.'" Valencia v. Lee, 316 F.3d 299, 304-05 (2d Cir. 2003) (citing Gibbs, 383 U.S. at 725).

However, the district court may exercise "considerable discretion over what state law claims it will include within its supplemental jurisdiction in a particular case," see Cushing v. Moore, 970 F.2d 1103, 1110 (2d Cir. 1992), and may decline to exercise its supplemental jurisdiction if:

> (1)   the claim raises a novel or complex issue of State law,

>     (2)   the claim substantially predominates over the
>           claim or claims over which the district court has
>           original jurisdiction,
>     (3)   the district court has dismissed all claims over
>           which it has original jurisdiction, or
>     (4)   in exceptional circumstances, there are other
>           compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  "In exercising its discretion with respect to retaining supplemental jurisdiction, the district court must balance several factors, including considerations of judicial economy, convenience, and fairness to litigants."  See Correspondent Serv. Corp. v. First Equities Corp. of Fla., 338 F.3d 119, 126 (2d Cir. 2003).  Additionally, "[w]here a pendent state claim turns on novel or unresolved questions of state law, especially where those questions concern the state's interest in the administration of government, principles of federalism and comity may dictate that these questions be left for decision by the state courts."  Valencia, 316 F.3d at 306; see also Gibbs, 383 U.S. at 726 ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

Notwithstanding defendant's contentions to the contrary, it appears that plaintiff's state law claims derive from the same "nucleus of operative fact" as plaintiff's Section 1981 claim, and thus that supplemental jurisdiction exists under 28 U.S.C. § 1367(a).  All of plaintiff's claims arise out of his dismissal

from the School's medical program, purportedly in a manner inconsistent with the policy in the student handbook providing each student 3 opportunities to pass the USMLE.  Additionally, adjudication of each claim will involve substantially similar proof; indeed, the facts recited by defendant in its memorandum related to plaintiff's poor performance in medical school, and allegedly forming the basis for defendant's dismissal of plaintiff, are relevant to plaintiff's Section 1981 claim as well as his state law claims because in defending against plaintiff's Section 1981 claim that similarly situated Caucasian students were treated differently than plaintiff, defendant will presumably offer evidence in an attempt to distinguish plaintiff from other students and thus explain or justify its dismissal of plaintiff.[2]  Thus, it can fairly be said that one would expect plaintiff to try all of his claims in the same proceeding.[3]

---

[2] See, e.g., Luongo v. Nationwide Mut. Ins. Co., 95civ3190 (MBM), 1996 WL 445365 (S.D.N.Y. Aug. 7, 1996) (denying Rule 12(b)(1) motion where state law claims "derive[d] from the same set of facts" as plaintiff's Title VII claim, were "based on essentially the same conduct," and where "[e]ven though the standards of [individual defendant's] liability [would] differ from the standards for [the employer's] liability, the claims still . . . require[d] many of the same witnesses, much of the same evidence, and determination of many of the same facts") (emphasis added).

[3] Because plaintiff's state law claims arise out of the same conduct by defendant as does plaintiff's Section 1981 claim – namely plaintiff's dismissal from medical school allegedly in violation of the student handbook policy – and because proof of such claims will be substantially similar to that for his Section 1981 claim, this case can be distinguished from the cases cited

Having determined that supplemental jurisdiction exists, the Court finds it appropriate to exercise such jurisdiction, none of the Section 1367(c) factors providing compelling reasons to decline to exercise such jurisdiction in this case. First, defendant argues that supplemental jurisdiction should be

---

by defendant. See, e.g., James v. Sun Glass Hut of Cal., Inc., 799 F. Supp. 1083 (D. Col. 1992) (granting motion to dismiss state law claims for lack of jurisdiction where plaintiff's state law claims for breach of contract, promissory estoppel, fraud, negligent misrepresentation, bad faith, and outrageous conduct "clearly predominate[d]" over plaintiff's age discrimination claim and would "substantially expand the scope of th[e] case" by requiring "elements of proof that [were] distinct and foreign" to her federal age discrimination claim); Glasser v. Group W Satellite Commc'ns., 89civ664 (WWE), 1990 WL 128563 (D. Conn. July 11, 1990) (concluding that plaintiff's federal age discrimination claim did not arise out of the same operative facts as plaintiff's breach of employment contract claim and thus declining to exercise supplemental jurisdiction over the latter, distinguishing case from one where all of plaintiff's claims arose out of the same event); Brokke v. Stauffer Chem. Co., 703 F. Supp. 215 (D. Conn. 1988) (declining to exercise supplemental jurisdiction over plaintiff's state law claims – premised on an alleged oral agreement that he would not be terminated without cause – finding that "[t]he scope of issues" raised by plaintiff's state law claims was "significantly more expansive" than those raised by plaintiff's federal age discrimination and ERISA claims "given the length of the plaintiff's employment and the relatively brief period of time relevant to his federal claims" and where "plaintiff would be required to present a greater quantum of proof in order to establish a basis for recovery on his [state law] claims than would be necessary for [his federal claims]"); Koehler v. Chesebrough-Ponds, Inc., 705 F. Supp. 721 (D. Conn. 1988) (dismissing plaintiff's state law claims for breach of contract, promissory estoppel and detrimental reliance, intentional infliction of emotional distress, and abusive discharge, noting, inter alia, the difference in the "issues presented and the proof required" between plaintiff's state law claims and plaintiff's federal age discrimination claim, finding that much of the state law claim evidence was irrelevant to plaintiff's federal claim and would "complicate and obscure the issues concerning such claim").

declined because plaintiff's state law claims predominate over his federal claim.  While plaintiff asserts only one federal claim and several state law claims, a predominance determination requires "an interest-sensitive analysis rather than a 'numerical count' of state and federal claims."  See Luongo, 1996 WL 44365, at *5 (citing Borough of West Mifflin v. Lancaster, 45 F.3d 780, 789 (3d Cir. 1995)).  The analysis therefore centers on, inter alia, the scope of proof for each claim and the scope of issues raised.  See id.; Gibbs, 383 U.S. at 726.  As discussed above, it appears that the proof involved in all of plaintiff's claims will be substantially similar; likewise the issues raised by plaintiff's claims all center around whether defendant justifiably dismissed plaintiff.  Thus, other than the sheer numerical dominance of plaintiff's state law claims, it does not appear that plaintiff's state law claims "predominate" for supplemental jurisdiction purposes under Section 1367(c).

Further, plaintiff's state law claims do not raise sufficiently novel or complex issues of state law to justify declining to exercise supplemental jurisdiction.  Indeed, the area of Connecticut law of student claims against educational institutions, while still developing, is neither as unsettled as defendant believes nor as unresolved as the areas of law discussed in the cases cited by defendant (see infra note 4).  While defendant is correct that Connecticut courts have resisted

a tort of "educational malpractice" in light of the principle of according educational institutions deference in their academic decisions, the Connecticut Supreme Court has nevertheless quite clearly recognized "at least two situations wherein courts will entertain a cause of action for institutional breach of a contract for educational services." Gutpa v. New Britain General Hosp., 239 Conn. 574, 590-92 (Conn. 1996).

The first of these exceptions "would be exemplified by a showing that the educational program failed in some fundamental respect, as by not offering any of the courses necessary to obtain certification in a particular field. The second would arise if the educational institution failed to fulfill a specific contractual promise distinct from any overall obligation to offer a reasonable program." Id. at 592-93; see also, e.g., Faigel v. Fairfield Univ., 75 Conn. App. 37 (Conn. App. Ct. 2003) (considering whether alleged contract constituted a "specific contractual promise" satisfying the second Gutpa exception). Indeed, this Court has previously adjudicated a similar breach of contract claim against Yale University, denying a motion to dismiss plaintiff's claim where plaintiff had "alleged specific promises by Yale which, if supported by the evidence, are capable of objective assessment by the Court and therefore do not involve the Court in academic decision-making," thus satisfying the second Gutpa exception. See Johnson v. Schmitz, 119 F. Supp. 2d

90, 92-97 (D. Conn. 2000).[4]

Thus, because plaintiff's state law claims arise out of the same nucleus of operative fact as plaintiff's federal claim, and because the state law claims neither predominate in this action nor raise particularly novel or unsettled issues of Connecticut

---

[4] As noted above, this case can be distinguished from the cases cited by defendant in which truly novel or unsettled theories of recovery and/or issues of law were presented. See Lopez v. Smiley, 375 F. Supp. 2d 19, 25-26 (D. Conn. 2005) (declining to exercise supplemental jurisdiction where plaintiff wanted the court "to recognize an entire suite of novel Connecticut constitutional tort causes of actions . . . in the absence of any guidance from (and in some instances, in express defiance of) Connecticut decisional law"); DeLoreto v. Ment, 944 F. Supp. 1023, 1035-36 (D. Conn. 1996) (declining to exercise supplemental jurisdiction over plaintiff's intentional infliction of emotional distress claim, noting "the availability of an intentional infliction of emotional distress claim in the employment context has been a subject of recent dispute in Connecticut" and where the Connecticut Supreme Court had "not yet defined the threshold standard for 'extreme and outrageous' conduct in the employment context"); Lajoie v. Conn. State Bd. of Labor Relations, 871 F. Supp. 550, 554 (D. Conn. 1994) (declining to exercise supplemental jurisdiction over defendant's state law counterclaims where such claims raised novel, complex and "hotly-disputed" state law issues involving "important questions concerning the policy of the state's attorney general" where the court was "unable to find any Connecticut state court decisions, or any Connecticut authority whatsoever, . . . directly on point"); Koehler v. Chesebrough-Ponds, Inc., 705 F. Supp. 721, 722-25 (D. Conn. 1988) (declining to exercise supplemental jurisdiction over plaintiff's claim of intentional infliction of emotional distress, noting "the availability of such a claim in the employment context has been a subject of recent dispute in Connecticut"); Kelsey v. Sheraton Corp., 662 F. Supp. 10, 12-13 (D. Conn. 1986) (declining to exercise supplemental jurisdiction over plaintiff's claims of intentional infliction of emotional distress and "outrageous discharge" where the availability of the former claim in Connecticut was unresolved in state courts, and where the parties had not brought to the attention of the court any Connecticut case sustaining the latter cause of action).

law, the Court shall exercise its supplemental jurisdiction over plaintiff's state law claims (Counts II-V), and defendant's motion to dismiss these claims for lack of jurisdiction is denied.[5]

### III. RULE 12(B)(6)

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the pleader. Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Allen v. Westpoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).  A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 44 (1957) (footnote omitted); Jahgory v. N.Y. State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test."  Scheuer v. Rhodes, 416 U.S. 232, 236

---

[5] Contrary to plaintiff's contention, no diversity jurisdiction exists over his state law claims as the Amended Complaint contains no allegation that plaintiff is a non-Connecticut resident and "[i]n an action in which jurisdiction is premised on diversity of citizenship, diversity must exist at the time the action is commenced."  Universal Licensing Corp. v. Paola del Lungo S.P.A., 293 F.3d 579, 581 (2d Cir. 2002).

(1974).

Defendant argues that plaintiff's breach of contract claim (Count II) should be dismissed because "Connecticut permits a student to challenge his dismissal from an educational program only in very limited circumstances," none of which are present here. Def. Mem. at 19-20 (citing, inter alia, Gutpa, 239 Conn. 574). Defendant contends that the same policy considerations underlying the rule articulated by the Supreme Court in Gutpa compel dismissal of plaintiff's other state law claims (Counts III-V). Id. at 24-25 ("[W]hether the cause of action sounds in tort or contract, the Connecticut courts will not permit educational decisions to be reviewed in court except in the two limited situations contemplated by Gutpa.").

While plaintiff's state law claims do not fall within the first Gutpa exception, they do fall within the second exception because plaintiff has alleged that "[t]he provision of the student handbook granting a student 3 opportunities to pass the examination before dismissal is a distinct contractual promise independent of the defendant's obligation to offer a reasonable educational program." Amended Complaint ¶ 34.[6] As this Court

---

[6] This case can thus be distinguished from Faigel, where the Connecticut Appellate Court ruled that defendant's alleged vague promise to give plaintiff student "many credits" for her studies abroad was insufficiently specific to meet the second Gutpa exception of a "specific contractual promise." 76 Conn. App. at 42-43 ("We have searched Connecticut case law to ascertain whether cases decided since Gutpa have moved away from

found in Johnson, supra, plaintiff has presented a claim that defendant "failed to deliver on its express . . . contractual duties" to afford each student three opportunities to pass the USMLE before dismissal, and this "alleged promise[] [is] based on Yale's own representations and procedures related to conduct peripheral or ancillary to the central educational process." Johnson, 119 F. Supp. 2d at 96.  Thus, like the plaintiff's claim in Johnson that Yale had breached its promise "to safeguard students from academic misconduct, to investigate and deal with charges of academic misconduct, and to address charges of academic misconduct in accordance with its own procedures," plaintiff's claim here for breach of contract does "not implicate the jurisprudential considerations associated with the rejected tort of educational malpractice, as the Court or fact finder will not be required to evaluate subjective aspects of the quality of Yale's . . . academic program or otherwise make judgments on purely academic issues, but instead will determine whether or not Yale had a contractual duty . . . and, if so, whether that duty was breached."  Id.[7]

---

the requirement that a claim of breach of contract by an educational institution must be based on the breach of a 'specific contractual promise.'  We have found none that does so.").

[7] Because plaintiff's claim is not about a promise to provide academic services (for example, the failure to provide a promised tutor, as was the case in Ross v. Creighton Univ., 957 F.2d 410, 417 (7th Cir. 1992)), his claim is even more distinct

Because plaintiff's breach of contract claim as pleaded satisfies the second <u>Gutpa</u> exception, that claim will not be dismissed.  Because, as noted above, defendant's argument as to plaintiff's other state law claim hinges upon failure to satisfy this exception, defendant's motion as to plaintiff's other state law claims will also be denied.

**IV.   CONCLUSION**

For the foregoing reasons, defendant's Motion to Dismiss [Doc. # 20] is DENIED.

                                   IT IS SO ORDERED.

                                        /s/
                                   Janet Bond Arterton
                                   United States District Judge

**Dated at New Haven, Connecticut this 3rd day of April 2006.**

---

from the educational malpractice type claims that have been disallowed in Connecticut.  <u>See</u> <u>also</u> <u>Johnson</u>, 119 F. Supp. 2d at 96 (maintaining plaintiff's breach of contract claim not for breach of a promise to provide educational services, but for failure "to safeguard students from academic misconduct, to investigate and deal with charges of academic misconduct, and to address charges of academic misconduct in accordance with its own procedures").